UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PENELOPE ELIZABETH BARNES                                                               PLAINTIFF

VERSUS                                                       CIVIL ACTION NO. 3:22-CV-692-HTW-RPM

COMMISSIONER OF SOCIAL SECURITY                                                         DEFENDANT

## REPORT AND RECOMMENDATIONS

Before the Court is Plaintiff Penelope Elizabeth Barnes's Complaint appealing from the Commissioner of Social Security's decision which denied her claim for supplemental security income under the Social Security Act. Doc. [1]. On September 24, 2020, Barnes filed an application for supplemental security income alleging disability beginning on June 20, 1995. Doc. [10-1] at 57, 70, 196. Barnes was 47 years old at the time of filing. *Id.* at 70. She has a tenth-grade education and no past relevant work experience. *Id.* at 74, 228.

Barnes's claim was denied initially and on reconsideration. *Id.* at 68, 74. She requested and was granted a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 97. On April 19, 2022, the ALJ issued a decision denying supplemental security income. *Id.* at 17–26. The ALJ found that Barnes had not engaged in substantial gainful activity since the application date of September 24, 2020. *Id.* at 19. The ALJ further found that Barnes had severe impairments of cardiovascular disorder, bipolar disorder, and impulse control disorder. *Id.* The ALJ also considered whether Barnes had severe impairments from diabetes mellitus and a left-knee injury but found that those conditions did not rise to the level of severe impairment. *Id.* at 19–20. The ALJ concluded that Barnes's impairment or combination of impairments did not meet any of the listings found in the Social Security regulations. *Id.* at 20.

Based on her impairments, the ALJ determined that Barnes maintained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), but she can only occasionally interact with coworkers, supervisors, and the public during an eight-hour workday. *Id.* at 21. Relying on the testimony of the vocational expert, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Barnes can perform; therefore, she is not disabled as defined by the Social Security Act. *Id.* at 25–26. The Appeals Council denied Barnes' request for review. *Id.* at 6.

Barnes then filed the instant Complaint in federal court. Doc. [1]. Barnes argues that (1) the ALJ erred in his analysis of the medical opinions; and (2) the ALJ erred in failing to make a finding as to her ability to maintain or sustain employment. Doc. [14] at 3.

## Law and Analysis

## Standard of Review

The court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision is supported by substantial evidence, then the findings are conclusive; and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the

[Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration ("SSA") utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4). Under this analysis, the ALJ may decide a claimant is disabled if he or she finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he or she is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he or she cannot perform this alternative employment. *Id.*

**Analysis of Medical Opinions**

In her first assignment of error, Barnes argues the ALJ erred in his analysis of the medical opinions in this case. Doc. [14] at 3. Specifically, she takes issue with the ALJ's assessment of the medical opinions of Seth Kalin, M.D. *Id.* at 4. Much of Barnes' argument is devoted to the contention that the ALJ's persuasiveness evaluation was inadequate for failure to consider factors of supportability and consistency. *Id.* at 4–7. In passing, Barnes also argues there was a "lack of substantial evidence." *Id.* at 7. These issues—the adequacy of the ALJ's persuasiveness findings and the question of whether substantial evidence supports those findings—are "legally distinct" issues and should be addressed separately. *Miller v. Comm'r of Soc. Sec.*, No. 1:20-CV-194, 2021 WL 7541415, at *8 (S.D. Miss. Dec. 17, 2021).

To summarize, Barnes argues that the ALJ's RFC determination—specifically the limitation of only occasional interaction with coworkers, supervisors, and the public during an eight-hour workday—is not commensurate with Dr. Kalin's opinion. Doc. [14] at 5. Instead, she contends Dr. Kalin's restrictions are exceedingly more restrictive than those in the RFC determination. *Id.* In the Court's view, this argument more appropriately concerns whether the ALJ erred in his interpretation of Dr. Kalin's opinion, which goes to the issue of substantial evidence rather than the adequacy of ALJ's persuasiveness findings. *See, e.g., Thibodeaux v. Astrue*, 324 F. App'x 440, 445–46 (5th Cir. 2009) (addressing an argument that the ALJ misinterpreted the mental RFC opinion provided by a non-examining state medical consultant). In any event, "the question of whether an ALJ provided an 'adequate discussion' to allow for meaningful judicial review is a threshold question that is addressed *before* reaching the issue of substantial evidence." *Miller*, 2021 WL 7541415, at *8. Therefore, because Barnes' has presented it as an issue, the Court will first address the ALJ's persuasiveness analysis out of abundance of caution.

4

A. **Persuasiveness Analysis**

Barnes filed her application for disability benefits on September 24, 2020. Doc. [10-1] at 57, 70. For any application filed "on or after March 27, 2017," 20 C.F.R. § 416.920c applies. Under these more recent Social Security regulations, an ALJ is required to "explain" his or her persuasiveness finding insofar as "consistency" and "supportability" are concerned. 20 C.F.R. § 416.920c(b)(2). Pursuant to 20 C.F.R. § 416.920c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s)." In other words, ALJs are no longer required to give controlling weight to the opinions of treating physicians. However, before an ALJ may discount or reject an opinion, he or she must "articulate in [the] determination or decision how persuasive [the ALJ] find[s] all of the medical opinions . . . in [the claimant's] case record." 20 C.F.R. § 416.920c(b); *see Moore v. Saul*, No. 3:20-CV-48, 2021 WL 754833, at *3 (S.D. Miss. Feb. 26, 2021) (discussing the same standard applied in Part 404). In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.920c(c).

The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. 416.920c(b)(2). "In order to provide an 'adequate discussion' or 'adequate explanation' about the persuasiveness of a given medical opinion, the ALJ must . . . provide sufficient analysis to allow the Court to *meaningfully review* whether his finding was supported by substantial evidence; the Court cannot be left to merely speculate about the reasons animating that finding." *Miller*, 2021 WL 7541415, at *7. "Ultimately, the ALJ must set forth a 'logic bridge' that links the medical evidence to his persuasiveness finding such that this Court can undertake a meaningful

judicial review of whether that finding is supported by substantial evidence." *Id.* (quoting *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021). Barnes argues that the ALJ's analysis of Dr. Kalin's opinion is "confusing" and failed to create this "discernable 'logic bridge.'" Doc. [14] at 7.

On July 17, 2021, Barnes submitted to a consultative mental status examination with Dr. Kalin. Doc. [10-3] at 311–16. The ALJ's decision considers and relies on Dr. Kalin's report from this examination. Doc. [10-1] at 23–25. According to Dr. Kalin's report, Barnes had no friends outside of social media, was not a member of a church or a social organization, and avoided crowded supermarkets. Doc. [10-3] at 312. Barnes reported an inconsistent work history for "being manic, unreliable or irritable with customers." *Id.* She also reported "distrust and suspiciousness of others, isolation, instability of interpersonal relationships, excessive emotionality and attention seeking, feelings of inadequacy and significant impulsiveness." *Id.* at 313. According to Barnes, her borderline personality disorder and her "highs and lows" affected her ability to work because she did not like to be around people. *Id.* She reported experiencing paranoia when around others and being triggered by loud noises and certain smells. *Id.* at 313–14.

Dr. Kalin reported that, during the examination, Barnes engaged in a cooperative and polite manner, demonstrated good eye contact, maintained good posture, and answered questions without difficulties. *Id.* at 314. Ultimately, Dr. Kalin opined that Barnes had no limitations in understanding, carrying out, and remembering one-step and complex instructions. *Id.* at 316. However, Dr. Kalin further opined that Barnes had the following functional limitations due to irritability and impulse-control issues resulting from mental illness:

1. minor limitations in sustaining concentration and persisting in a work-related activity at a reasonable pace;

2. major limitations in her ability to maintain effective social interactions on a consistent basis and independent basis with supervisors, coworkers, and the public; and
3. minor limitations in her ability to deal with normal pressures in a competitive work setting.

*Id.* Dr. Kalin's opinion that Barnes had "major limitations in her ability to maintain social interactions," and the ALJ's interpretation of that opinion, is at issue here.

The ALJ found Barnes had a "marked limitation" when it comes to interacting with others. Doc. [10-1] at 20. The ALJ referenced Barnes's symptoms of social withdrawal and panic or post-traumatic symptoms when exposed to large groups of people, as well as her history of anti-social behavior. *Id.* But the ALJ noted Barnes's ability to coexist with others for over a year. *Id.* The ALJ found Dr. Kalin's opinion "persuasive," stating that it was generally consistent with the objective medical evidence and supported by examination. *Id.* at 24. The ALJ explained that "although [Barnes] has been diagnosed with mental impairments, her mental status is generally unremarkable, although her history of anti-social behaviors is consistent with her allegations of marked impairments to social functioning." *Id.*

Taking Dr. Kalin's opinion into account, the ALJ determined that Barnes maintained the RFC to perform light work but limited her to occasional interaction with coworkers, supervisors, and the public during an eight-hour workday. *Id.* at 21. The ALJ provided the following explanation:

> In terms of [Barnes's] mental impairments, [Dr. Kalin] noted that [Barnes] had major impairments in social functioning due to irritability and impulse control issues resulting from her mental impairments. This is consistent with [Barnes's] symptoms and personal history of abuse as a child, abuse as a spouse, and incarceration. However, [Barnes's] mental status examinations generally fail to support moderate, marked, or extreme limitations in any of the other areas of mental functioning.
>
> [Barnes's] statements concerning the intensity, persistence, and limiting effects of her symptoms are not supported by the overall evidence of record to the extent that they purport to limit her to a greater degree than provided for in the residual functional capacity[.]

7

*Id.* at 25. In other words, the ALJ found that Dr. Kalin's opinion as to Barnes's major limitations in social functioning was consistent with her symptoms, abuse, and incarceration; nevertheless, the ALJ found that Barnes's statements as to her symptoms, contrasted with the overall evidence, did not support a greater degree of limitation than occasional interaction with coworkers, supervisors, and the public during an eight-hour workday. This Court is not left to "speculate about the reasons animating" this finding. *Miller*, 2021 WL 7541415, at *7.

"A case will not be remanded simply because the ALJ did not use 'magic words.'" *Fleming v. Comm'r of Soc. Sec.*, No. 4:22-CV-132, 2023 WL 2556832, at *2 (N.D. Miss. Mar. 17, 2023) (quoting *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021)). Here, although superfluous, the ALJ uses the magic words, i.e., "supported" and "consistent." Doc. [10-1] at 24–25. Still, to reiterate, the ALJ must "provide enough discussion of the evidence to allow for 'meaningful judicial review.'" *Id.* Like *Fleming*, the Court finds it is "evident from the totality of the ALJ's decision that he properly considered these factors." *Id.* (citing *Cox v. Comm'r of Soc. Sec.*, No. 3:21-CV-53, 2022 WL 834294, at *3–4 (N.D. Miss. Mar. 21, 2022)). While the length of the ALJ's explanation is "not profound," it does "more than pay lip service to the regulation" and adequately "articulate[s] his reasoning under the required factors." *Edwards v. Kijakazi*, No. 1:20-CV-292, 2023 WL 2242317, at *3 (S.D. Miss. Feb. 27, 2023) (quoting *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *3 (S.D. Miss. Aug. 11, 2021)). Accordingly, the Court finds no reversible error with respect to the ALJ's persuasiveness analysis.

### B. Substantial Evidence

Barnes further argues, albeit in conclusory fashion, there was a lack of substantial evidence. Doc. [14] at 7. Here, the Court also addresses what it construes as a contention that the ALJ erred in his interpretation of Dr. Kalin's opinion. "It is the responsibility of the ALJ to interpret 'the

medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). Furthermore, "experienced ALJs can draw their own conclusions based on accurate medical information." *Barrett v. Barnhill*, 906 F.3d 340, 343 (5th Cir. 2018). "The pertinent inquiry is not whether substantial evidence might support Plaintiff's preferred conclusion, but whether substantial evidence supports the ALJ's decision." *McGinnis v. Kijakazi*, No. 3:20-CV-450, 2022 WL 16548659, at *3 (S.D. Miss. Feb. 28, 2022).

The Court finds *McGinnis* particularly persuasive with respect to this issue. *Id.* at *2–4. In that case, the Court explained that "[a]n extreme limitation in social functioning is defined as a complete inability to independently, appropriately, or effectively interact with others on a sustained basis," while "a marked limitation is a 'seriously limited ability' to function independently, appropriately, or effectively on a sustained basis." *Id.* at *2. Here, Dr. Kalin opined that Barnes's had "major limitations in her ability to maintain effective social interactions on a consistent basis and independent basis with supervisors, coworkers, and the public." Doc. [10-3] at 316. It is noteworthy that Dr. Kalin's opinion does not state that Barnes had a *complete inability* in social functioning nor does it insinuate such.

The ALJ found Barnes had a "marked limitation" in interacting with others but noted "[s]he has been able to coexist with others in a communal living situation for over a year as of the time of the hearing." Doc. [10-1] at 20. As the ALJ correctly notes, this limitation in the "paragraph B" criteria is not an RFC assessment but is used to rate the severity of Barnes's mental impairments at steps two and three of the sequential evaluation process. *Id.* at 21; *see Mosley v. Comm'r of Soc. Sec.*, No. 3:23-CV-439, 2024 WL 1674511, at *2 (N.D. Miss. Apr. 18, 2024) (citing SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)). But it follows that the ALJ interpreted Dr. Kalin's

9

opinion of "major limitations" as "a 'seriously limited ability' to function independently, appropriately, or effectively on a sustained basis." *McGinnis*, 2022 WL 16548659, at *2. Indeed, the ALJ states that the RFC "assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." Doc. [10-1] at 21. In step four, the ALJ ultimately found Dr. Kalin's opinion persuasive. *Id.* at 24. Thus, the ALJ's RFC determination—which limited Barnes to only occasional interaction with coworkers, supervisors, and the public during an eight-hour workday—does not contradict the ALJ's findings that Barnes is markedly or seriously limited in her ability to interact with others. *See McGinnis*, 2022 WL 16548659, at *4. Nor is it incommensurate with Dr. Kalin's opinion. As such, the undersigned finds no error in the ALJ's interpretation here.

As for substantial evidence, it "is something more than a scintilla but less than a preponderance." *McCord v. Colvin*, 620 F. App'x 358, 359 (5th Cir. 2015) (quoting *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000)). It is also "described as 'that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Carey*, 230 F.3d at 135). "If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Id.* (quoting *Brown*, 192 F.3d at 496). Here, the Court finds the ALJ's decision is supported by substantial evidence as it relates to the limitation of occasional interaction in the RFC. Dr. Kalin's opinion constitutes substantial evidence supporting the ALJ's decision as to the limitation of occasional interaction.[1]

---

[1] The Court notes that the ALJ also considered the opinions of Bryman Williams, Ph.D. and Vicki Prosser, Ph.D. in addition to Dr. Kalin's opinion. Doc. [10-1] at 24. Dr. Williams found no limitation in Barnes's ability to interact with others. *Id.* at 63. Dr. Williams noted that Barnes was able to engage in social activities. *Id.* at 64. Dr. Prosser found only a mild limitation in Barnes's ability to interact with others. *Id.* at 72. But the ALJ found these opinions only partially persuasive, stating that Barnes's limitations with respect to interacting with others was understated by Dr. Williams and Dr. Prosser. *Id.* at 24.

**Ability to Maintain or Sustain Employment**

In her second assignment of error, Barnes argues that the ALJ erred in failing to make a finding as to her ability to maintain or sustain employment. Doc. [14] at 3, 7–9. She cites to the seminal case on this issue and its progeny. *See Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986); *Leidler v. Sullivan*, 885 F.2d 291 (5th Cir. 1989); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003); *Perez v. Barnhart*, 415 F.3d 457 (5th Cir. 2005). In *Frank*, the Fifth Circuit discussed *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002) and its holding that *Singletary* applies to both mental illness and physical disability. *Frank*, 326 F.3d at 619. In discussing that case, the court explained as follows:

> Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment. Nevertheless, an occasion may arise, as in *Watson*, where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required.

*Id.* Thus, "[i]t is the exceptional case where a medical impairment and its symptoms require a separate analysis of the ability to sustain employment." *Tutor v. Kijakazi*, No. 3:22-CV-60, 2022 WL 11902194, at *1 (N.D. Miss. Oct. 20, 2022) (citing *Frank*, 326 F.3d at 619).

In short, Barnes argues this is an exceptional case because Dr. Kalin opined that Barnes has major limitations in her ability to maintain effective social interaction on a consistent and independent basis due her symptoms resulting from mental illness. Doc. [14] at 9. And so, she asserts that the ALJ erred in failing to determine whether she could maintain employment despite her severe mental illness. *Id.* She concludes her argument stating as follows: "Throughout the record there is medical evidence that demonstrates [she] suffers from a severe mental illness and that her severe mental illness is directly related to her inability to maintain employment on a consistent basis." *Id.* As for Barnes's first point, Dr. Kalin diagnosed Barnes with unspecified

11

bipolar disorder, unspecified trauma and stressor related disorder, and unspecified impulse control disorder. Doc. [10-3] at 316. And the ALJ found that Barnes has severe mental impairments. Doc. [10-1] at 19. That is not disputed. But "something more than a mere diagnosis of bipolar disorder [or other mental impairment] to determine that the impairment waxes and wanes in its manifestation of disabling symptoms such that a separate finding regarding the claimant's ability to maintain work is required." *Crainey v. Astrue*, No. 4:11-CV-613, 2012 WL 5846406, at *7 (N.D. Tex. Nov. 1, 2012) (collecting cases). Barnes offers very little support for her claim that there is medical evidence throughout the record to demonstrate her alleged inability to maintain employment. Throughout her entire argument for this specific issue, she cites to the record just once: Dr. Kalin's opinion. Doc. [14] at 9; *see* [10-3] at 316.

Dr. Kalin's opinion certainly warranted consideration of whether Barnes has the ability to maintain employment. The record demonstrates that the ALJ took that question into consideration and accounted for it when making the RFC determination. *Wilson v. Barnhart*, 210 F. App'x 448, 451 (5th Cir. 2006). The "RFC is a measure of the claimant's capacity to perform work 'on a regular and continuing basis.'" *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). Thus, "an ability to perform work on a regular and continuing basis is inherent in the definition of RFC." *Id.*

In the RFC determination, the ALJ limited Barnes to occasional interaction with coworkers, supervisors, and the public during an eight-hour workday. Doc. [10-1] at 21, 24–25. The ALJ relied on Dr. Kalin's opinion, which noted that Barnes's "attention and concentration were tested and appeared intact" and her "judgment, insight, and reliability appeared to be good." Doc. [10-1] at 23; [10-3] at 315. The ALJ referenced Dr. Kalin's opinion that Barnes had major limitations in her ability to maintain effective social interactions on a consistent and independent basis with supervisors, coworkers, and the public. Doc. [10-1] at 24; [10-3] at 316. But the ALJ also

referenced Dr. Kalin's opinion that Barnes had only minor limitations in sustaining concentration and persisting in a work-related activity at a reasonable pace and in her ability to deal with normal pressures in a competitive work setting. Doc. [10-1] at 24; [10-3] at 316. Moreover, the ALJ considered the opinions of Dr. Williams and Dr. Prosser partially persuasive. Doc. [10-1] at 24. Both Dr. Williams and Dr. Prosser found either no limitations or only mild limitations in the four areas of mental functioning, including interacting with others. Doc. [10-1] at 63, 72.

Here, the Court finds that Barnes "has failed to provide evidence that required the ALJ to make a separate finding regarding her ability to maintain employment." *Wilson*, 210 F. App'x at 451. Other than Dr. Kalin's opinion, Barnes offers no "evidence that [her] condition 'waxes and wanes' in frequency or intensity such that [her] ability to maintain employment was not adequately taken into account in [the RFC] determination." *Castillo v. Barnhart*, 151 F. App'x 334, 336 (5th Cir. 2005) (quoting *Perez*, 415 F.3d at 466). As previously discussed, the ALJ relied on Dr. Kalin's opinion and the RFC incorporates that opinion in terms of Barnes's limitation in social interaction. And the ALJ considered Barnes's limitations in mental functioning as a whole, not just her limitation in social interaction. Barnes's ability to maintain or sustain employment was subsumed in this analysis and required no separate finding. *See Frank*, 326 F.3d at 619. Because the ALJ adequately considered Barnes' ability maintain employment and no separate finding was required, the Court finds that the ALJ did not err in failing to make a finding as to her ability to maintain or sustain employment.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 12th day of August 2024.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE